**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LAMARTH DUBOSE, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | No. 15-3843 |
| | : | |
| JAMEY LUTHER, et al., | : | |
| Respondents. | : | |

**REPORT AND RECOMMENDATION**

TIMOTHY R. RICE                                                                            June 22, 2016
U.S. MAGISTRATE JUDGE

Petitioner LaMarth Dubose, a prisoner at the State Correctional Institution in Laurel

Highlands, Pennsylvania, has filed a pro se petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  I recommend that Dubose's petition be dismissed with prejudice.

FACTUAL AND PROCEDURAL HISTORY

In May 2009, Dubose was tried by a jury in Philadelphia for attempted murder,

aggravated assault, conspiracy, and drug possession and firearms offenses.  See Commonwealth

v. Dubose, CP-51-CR-0009242-2008, N.T. 5/7/2009 at 1. The evidence showed that around 7

p.m. on June 5, 2005, Nydia Thomas arrived at a family party with her son, C.C., and her sister,

Niemah Thomas.  Id. at 44-45, 58.  At around 9 p.m., Nydia was in the backyard, C.C. was

dancing on the front porch with his grandmother, Mattie Epps, and Niemah was standing in the

doorway leading to the front porch of the house.  Id. at 38, 47, 52, 59.

Niemah saw two men standing in between two flatbed tow trucks about 30 to 35 feet

away.  Id. at 59, 88.  Although it was sunset, the men were standing under a street light and lights

from the porch and other houses made it bright outside.  Id. at 60-61, 68, 98-100.  The men

"stood out" and had on black and dark colors.  Id. at 59.  The shorter man passed a gun to the

taller man, who raised it into the air.  Id. at 59, 62.  The taller man then put the gun down and

both men then ran toward the house.  Id. at 63.  Niemah ran inside to get her infant son.  Id.  As

she turned to go into the house, she heard several gunshots.  Id. at 64.  One gunshot struck C.C.

in the lower left side of his face, breaking his jaw, knocking out his teeth, and exposing the bone.

Id. at 39-40, 49, 67.  Another shot struck Epps in her back below her shoulder bone.  Id. at 23.

Police interviewed Niemah about the men she had seen.  Id. at 71-73.  Niemah stated

only that the men were different heights.  Id.  The police also showed Niemah photographs of

possible suspects, but she did not make an identification.  Id. at 68-70. 76.  Approximately two

weeks later, police arrested Dubose for possession of drugs.  Id. at 118-25.

In late May 2008, Dubose was arrested for the June 2005 shooting.  See Crim. Dkt. at 3.

During a July 2008 preliminary hearing, Niemah identified Dubose as the shorter man, who

handed the gun to the taller man.  Id. at 69, 77, 113-14; N.T. 7/24/2008 at 23-24.  Niemah also

identified Dubose at trial.  N.T. 5/7/2009 at 61.  She explained she had no doubt Dubose was the

man she saw on the night of the shooting and she also was certain about her identification of

Dubose at the preliminary hearing.  Id. at 113-14.

On May 8, 2009, the jury found Dubose not guilty of attempted murder of C.C. and Epps,

but guilty of two counts of aggravated assault and one count of criminal conspiracy, possession

of an unlicensed firearm, possession of instrument of a crime, and possession of a controlled

substance.  N.T. 5/8/2009 at 14-19.  The trial court sentenced Dubose to an aggregate term of 15-

30 years of imprisonment.  See Crim. Dkt. at 5-7.

In September 2010, the Superior Court affirmed Dubose's judgment of sentence and in

March 2011, the Pennsylvania Supreme Court denied review.  See 2/2/2010 Super. Ct. Op.;

Commonwealth v. Dubose, 19 A.3d 1049 (Pa. 2011).  In August 2011, Dubose filed a

2

pro se petition for relief under Pennsylvania's Post-Conviction Relief Act, 42 Pa. C.S. § 9524 et seq. ("PCRA"). See Crim. Dkt. at 14. After appointing counsel and considering an amended petition, the PCRA court dismissed the petition. Id.at 14-15. The Superior Court affirmed in August 2014, and the Supreme Court denied review in March 2015. Id. at 17.

On July 6, 2015, Dubose timely filed his habeas petition. See Habeas Pet. (doc. 1).

DISCUSSION

Before seeking federal habeas relief, a petitioner must exhaust all available state court remedies, "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted); see also 28 U.S.C. § 2254(b)(1). If the petitioner failed to exhaust his state court remedies on a claim and the state court would now refuse to review the claim based on a state procedural rule that is independent of the federal question and adequate to support the judgment, I may deny the claim as procedurally defaulted. See Coleman v. Thompson, 501 U.S. 722, 731-32, 735 n.1 (1991). I also may find a habeas claim procedurally defaulted if the petitioner presented it to the state court, but the state court refused to address it on its merits based on an adequate and independent state procedural ground. Id. at 731-32; Cone v. Bell, 556 U.S. 449, 465 (2009). I may consider a procedurally defaulted claim only if a petitioner demonstrates: (1) a legitimate cause for the default and actual prejudice from the alleged constitutional violation; or (2) a fundamental miscarriage of justice from a failure to review the claim. Coleman, 501 U.S. at 750.

If a claim is not procedurally defaulted and the state court has denied it on its merits, I can grant relief on the claim only if the state court's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in

3

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This is a "difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Where the petitioner cannot meet this burden, his claim must be denied as meritless.

I.    Double Jeopardy

Dubose argues that his sentences for attempted murder and aggravated assault violated the double jeopardy clause of the Fifth Amendment.

This claim is procedurally defaulted because Dubose failed to adequately raise it before the Pennsylvania state courts in his direct appeal or PCRA proceedings. See Def.'s 1925(b) Statement; 1/8/2010 Tr. Ct. Op. at 2; 9/2/2010 Super. Ct. Op. at 2-3; 10/4/2012 Am. PCRA Petition at ¶¶ 13, 14; 9/20/2013 PCRA Ct. Op. at 4-5; 8/27/2014 Super. Ct. Op. at 3-4; see also Baldwin, supra at 3; Harmon v. Lamar, No. 13-3762, 2016 WL 521084, at *3 (3d Cir. Feb. 10, 2016) ("A threshold issue we must address is whether Harmon appropriately pursued his double jeopardy claim in the state court proceeding."). Although Dubose mentioned "double jeopardy" in his pro se PCRA petition, he failed to explain the reference or why it warranted him relief. See 9/6/2011 PCRA Pet. He also failed to include this claim in his amended PCRA petition or briefing related to that petition. See 10/4/2012 Am. PCRA Petition; 9/20/2013 PCRA Ct. Op. at 4-5; 8/27/2014 Super. Ct. Op. at 3-4. Accordingly, this claim was not properly raised before the state courts and it was never considered. See Commonwealth v. Bullock, 948 A.2d 818, 823 (Pa. Super. 2008) (appellant abandoned claim when he did not develop it in his brief); see also Tyler v. DiGuglielmo, No. Civ.A.03-6491, 2005 WL 477997, at *4 (E.D. Pa. Feb. 28, 2005) (state courts' refusal to consider claim because it was not properly briefed was based on independent and adequate state ground). Dubose also is now precluded from raising this claim in state court.

4

See Pa. R.A.P. 903 (allowing one right to appeal to Superior Court within 30 days of trial court's final order); 42 Pa. C.S. § 9545(b)(1) (requiring PCRA petition to be filed within one year of final judgment); Coleman, 501 U.S. at 735 n.1

Although Dubose alleges that he failed to raise this claim in his direct appeal due to the ineffectiveness of his trial/direct appeal counsel, he never raised such a claim in his PCRA petition. This claim of trial/direct appeal counsel ineffectiveness, thus, cannot establish cause for his procedural default. See Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000) (ineffectiveness claim generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default"); see also Martinez v. Ryan, 132 S. Ct. 1309, 1315, 1318-19 (2012) (claim of ineffectiveness of PCRA counsel may establish cause for procedural default).

Nevertheless, this claim is meritless because Dubose was not convicted of both attempted murder and aggravated assault. Rather, he was acquitted of attempted murder and convicted of criminal conspiracy to convict murder and aggravated assault. See N.T. 5/8/2009 at 14-19. The court then sentenced Dubose based on those convictions: 10 to 20 years imprisonment for the conspiracy to commit attempted murder conviction followed by 5 to 10 years for the aggravated assault conviction.[1] See N.T. 6/11/2009 at 21. Although attempted murder and aggravated assault are the same offense because aggravated assault is a lesser included offense of attempted murder, criminal conspiracy to convict murder and aggravated assault are not the same offense

---

[1]     Although Dubose's sentencing order and the criminal docket state that Dubose was convicted of, and sentenced to, attempted murder, those are obvious clerical errors because the notes of testimony clearly show that Dubose was convicted of criminal conspiracy and aggravated assault and sentenced for those convictions, not attempted murder. See Response (doc. 18), Ex. G, 6/11/209 Sentencing Order; Crim. Dkt. at 6; see also N.T. 5/8/2009 at 14-19; N.T. 6/11/2009 at 21; Commonwealth v. Borrin, 80 A.3d 1219, 1227 (Pa. 2013) (clerical errors or obvious errors shown to be inconsistent with what occurred in the case are subject to repair).

because they include different elements.  See Harmon v. Lamar, 2016 WL 521084, at *5 (citing

Commonwealth v. Anderson, 650 A.2d 20, 24 (Pa. 1994) (because aggravated assault, the lesser

offense, contains some, but not all the elements of the greater offense, attempted murder, the two

offenses merge for sentencing and imposition of consecutive sentences for crimes violates the

double jeopardy clause)); 18 Pa. C.S. § 903 (conspiracy requires proof of agreement to engage in

crime or planning or commission of crime); id. § 2702 (aggravated assault requires an attempt to

cause serious bodily injury).  Thus, Dubose's sentences for his criminal conspiracy and

aggravated assault convictions do not violate the double jeopardy clause.  See Harmon, 2016 WL

521084 at *5 ("The Double Jeopardy Clause 'protects against multiple punishments for the same

offense.'")

II.    Ineffectiveness for Failing to Preserve Request for Kloiber Instruction

Dubose also argues that trial counsel was ineffective for failing to preserve his request for

a Kloiber instruction.  Such an instruction informs the jury that an eyewitness' identification

should be viewed with caution where the eyewitness: (1) did not have an opportunity to clearly

view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem

making an identification in the past.  Commonwealth v. Rollins, 738 A.2d 435, 448 n.14 (Pa.

1999) (citing Commonwealth v. Kloiber, 106 A.2d 820, 826-27 (Pa. 1954)).

Dubose's attorney requested a Kloiber instruction regarding Niemah's identification of

Dubose, asserting Niemah had not provided detailed descriptions of the suspects after the crime,

her preliminary hearing identifications contained "assumptions and presumptions," and she may

not have had a good view of the suspects.  N.T. 5/7/2009 at 137-40.  The trial court denied this

request, explaining that "the conditions that would be needed to require the giving of a Kloiber

charge do not exist in this case."  Id. at 142.  Dubose's attorney did not raise this issue in his

6

post-trial motion or direct appeal.  See Post-Sentence Motion; 1925(b) Statement.

In his amended PCRA petition, Dubose argued that his trial counsel was ineffective for not preserving the Kloiber charge issue on direct appeal.  See 10/4/2012 Am. PCRA Petition ¶ 14(a).  The state courts, however, denied this claim as meritless.  The PCRA court explained that a Kloiber instruction was not warranted because Niemah testified that she had an unobstructed view of Dubose from the porch, there was ample lighting to observe Dubose, and she identified him at both the preliminary hearing and trial.  9/20/2013 PCRA Ct. Op. at 5.  The Superior Court affirmed, finding a Kloiber instruction was unwarranted because Niemah's identification "was positive and unshaken."  8/27/2014 Super. Ct. Op. at 6.  Thus, the court reasoned that trial counsel could not have been ineffective for failing to preserve his request for such an instruction. Id. at 6-7.

The state courts' decisions were not based on an unreasonable determination of the facts. Niemah identified Dubose without any doubt at the preliminary hearing and trial.  N.T. 5/7/2009 at 61, 113-14; N.T. 7/24/2008 at 23.  She also explained that she clearly observed the suspects, who were standing under a streetlight, immediately before the crime.  N.T. 5/7/2009 at 60, 68, 98-100.

The state courts' decisions also were not contrary to clearly established federal law.  The United States Supreme Court has set forth a two-part test for ineffectiveness claims.  See Strickland v. Washington, 466 U.S. 688 (1984).  "First, the defendant must show counsel's performance was deficient," meaning "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  Id. at 687.  "Second, the defendant must show the deficient performance prejudiced the defense," meaning "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

Id.  "Unless a defendant makes both showings, it cannot be said that the conviction or . . .

sentence resulted from a breakdown in the adversary process that renders the result unreliable."[2]

Id.  Furthermore, where the state court has denied an ineffectiveness claim on its merits, a habeas

petitioner must show the state court's decision was "objectively unreasonable."  Renico v. Lett,

559 U.S. 766, 733 (2010); see also Yarborough v. Gentry, 540 U.S. 1, 6 (2003) (review of

ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal

habeas").

      This Court is bound by the state courts' decision that a Kloiber instruction was

unwarranted under Pennsylvania law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is

not the province of a federal habeas court to reexamine state-court determinations on state-law

questions").  Given that determination, it was objectively reasonable under Strickland for the

state courts to conclude that counsel was not ineffective for failing to preserve his request for

such an instruction.  See Strickland, 466 U.S. at 687 (counsel must show defendant's actions

prejudiced him); Real v. Shannon, 600 F.3d 302, 310 (3d Cir. 2010) (counsel cannot be

ineffective for failing to raise a meritless claim).

      This claim should be denied as meritless.

III.    Ineffective Assistance of Counsel for Failing to File Motion to Suppress

      Dubose next argues his trial counsel was ineffective "when he withdrew a previously

---

[2]     Pennsylvania essentially applies the same test for ineffectiveness assistance of counsel as the federal courts.  See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000); Commonwealth v. Sneed, 899 A.2d 1067, 1076 (Pa. 2006) (To prove counsel ineffectiveness, a petitioner must show: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interest; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different.").

filed motion to suppress identification and/or where he failed to pursue his own motion to suppress identification under circumstances where the identification was unduly suggestive due to prosecutorial misconduct."  Habeas Pet. at 12.

The state courts denied this claim as meritless.  The Superior Court explained that a pretrial identification will not be suppressed as violative of due process rights unless the facts demonstrate the identification procedure was so infected by suggestiveness "as to give rise to a substantial likelihood of irreparable misidentification."   8/27/2014 Super. Ct. Op. at 7 (citing Commonwealth v. Bruce, 717 A.2d 1033, 1037 (Pa. Super. 1998)).  The court then noted that although Dubose contended that the prosecution had informed Niemah that Dubose would be seated next to the defense attorney at the preliminary hearing, there was no evidence to support this contention.  8/27/2014 Super. Ct. Op. at 7-8.  The court said that when Dubose's attorney asked Niemah if she had identified Dubose at the preliminary hearing because he was the only person standing next to his attorney, she answered, "No.  It was because when I saw him, it clicked."  Id. at 8 (quoting N.T. 5/7/2009 at 69-70).  She also explained she recognized Dubose from the night of the shooting and she was not mistaken.  Id. (quoting N.T. 5/7/2009 at 69-70). The court then concluded that because Niemah's identification at the preliminary hearing was not the result of a suggestive procedure, Dubose's counsel could not have been ineffective for failing to file a meritless motion to suppress.  Id.

The Superior Court's decision was not based on an unreasonable determination of the facts or contrary to clearly established federal law.  The United States Supreme Court has explained that "[r]eliability is the linchpin in determining the admissibility of identification testimony. . . ."  Manson v. Brathwaite, 432 U.S. 98, 114 (1977); see also United States v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003) (even procedures that include a degree of

suggestiveness may be lawful if they do not "undermine[] the reliability of the resulting

identification").  In determining whether identification evidence is sufficiently reliable, a court

must look at the totality of the circumstances, including "the opportunity of the witness to view

the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior

description of the criminal, the level of certainty demonstrated at the confrontation, and the time

between the crime and the confrontation."  Mason, 432 U.S. at 114 (citing Neil v. Biggers, 409

U.S. 188, 199-200 (1972)).

     Although there was a substantial period of time between Niemah's identification of

Dubose and the crime, her identification was sufficiently reliable based on the other factors noted

by the state courts, including her opportunity to view Dubose at the time of the crime, her degree

of attention, and her certainty in her identifications at the preliminary hearing and trial.  Thus, the

state courts' decision that a motion to suppress would have been meritless was consistent with

Mason.  Given this determination, it also was objectively reasonable for the state courts to

conclude that Dubose's counsel was not ineffective for failing to file a meritless motion.  See

Strickland, supra at 8; Real, supra at 8-9.

     This claim should be denied as meritless.

IV.   **Ineffective Assistance for Failing to Object to Niemah's Identification based on her**
       **Failure to Participate in a Court-Ordered Line-Up**

     Dubose also argues that his trial counsel was ineffective for failing to object to Niemah's

identification because a previous court had ordered her to appear for a line-up and she failed to

do so.

     The state courts also denied this claim as meritless because Dubose failed to present any

evidence showing a line-up had been ordered.  See 9/20/2013 PCRA Ct. Op. at 6; 8/27/2014

Super. Ct. Op. at 9.  The PCRA court explained Dubose did not cite to any place in the record where a line-up had been ordered.  See 9/20/2013 PCRA Ct. Op. at 6.  The Superior Court additionally noted that Dubose's counsel admitted that he could not find any order on the docket or the Court of Common Pleas website.  See 8/27/2014 Super. Ct. Op. at 9.  Thus, the Superior Court concluded that Dubose's attorney could not have been ineffective for failing to object to Niemah's testimony because she had not participated in a court-ordered line-up.  Id. at 9-10.  This decision was based on a reasonable determination of the facts, which do not show that a line-up was ever ordered,[3] and was not contrary to clearly established federal law, which also requires Dubose to prove the facts underlying his claim.  See Johnson v. Zerbst, 304 U.S. 458, 468 (1938) (federal habeas petitioner has burden of proving claim); Goins v. Brierley, 464 F.2d 947, 949 (3d Cir. 1972) (habeas petitioner must prove facts in support of claim).  Thus, Dubose's counsel could not have been effective for failing to object to Niemah's testimony based on her failure to appear at a court-ordered line-up, and this claim should be denied as meritless.

---

[3]     In discussing a jury question at the conclusion of the trial, the defense attorney told the court that the parties had agreed to have a line-up, but it never happened.  N.T. 5/8/2009 at 4-5.  This statement, however, does not constitute evidence that a line-up was ordered or even agreed to by the parties.

11

## R E C O M M E N D A T I O N

AND NOW, on June 22, 2016, it is respectfully recommended that the petition for writ of habeas corpus be DENIED with prejudice.  It is further recommended that there is no probable cause to issue a certificate of appealability.[4]  Petitioner may file objections to this Report and Recommendation within fourteen days after being served with a copy.  See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.  See Leyva, 504 F.3d at 364.

BY THE COURT:

/s/ Timothy R. Rice_____
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE

---

[4]      Because jurists of reason would not debate my recommended procedural or substantive dispositions of the petitioner's claims, no certificate of appealability should be granted.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).